[No. 36197-0-I.   Division One.   May 27, 1997.]

KAREN OOSTRA, *Respondent*, v. MARK HOLSTINE, *Appellant.*

---

*Michael J. Tario* and *Tario & Associates,* for appellant.

*Timothy C. Farris, Philip J. Buri,* and *Brett & Daugert, L.L.P.,* for respondent.

Cox, J. — Mark Holstine appeals the judgment against him for damages caused by his sexual abuse of his stepdaughter Karen Oostra. He claims the trial court should have dismissed the case on statute of limitations grounds because Oostra commenced this action seven years after his last act of abuse. Holstine also challenges the trial court's order directing that he register as a sex offender. Oostra timely commenced this action under RCW 4.16.340, the applicable statute of limitations. But the judgment in this civil proceeding was not a proper basis to require Holstine to register as a sex offender. Accordingly, we affirm in part and reverse in part.

Dorothy Holstine married Mark Holstine in 1976. Karen Oostra is one of Dorothy's two daughters. Mark moved in with Dorothy and her daughters in mid-1977. At the time, Karen was eight years old.

The Holstines began to perform sexual acts in front of their daughters, including sexual intercourse and oral sex. On several occasions, the Holstines had intercourse on a sofa bed in the living room of the family residence while Karen sat nearby. While the Holstines were engaged in sexual intercourse on one such occasion, Mark asked Karen to get a mirror from the bathroom and hold it so that he and she could observe more closely. In July 1978, Mark penetrated Karen's vagina with his finger while the two were alone in the house together. Oostra also testified that, when Dorothy was not home, Mark masturbated in front of her on a regular basis over a nine-year period

until she moved out of the house in 1987 at the age of 18. If Oostra and her older sister tried to avoid observing the masturbation, their mother would punish them for being rude to Mark.

Oostra also testified as to her reactions to the abuse while it was occurring. On one occasion when she was 10 years old, Oostra went to her parents' bedroom, yanked the curtains off the wall, and then went to her bedroom and broke a window. She then went to the garage and picked up a gun, planning to shoot herself. But she did not, because she did not know how to use the gun. Oostra also drank to excess weekly when she was in high school. But Oostra's unrefuted testimony established that neither the suicide attempt nor the drinking was at the time traced to the sexual abuse.

In October 1993, Oostra was facing personal difficulties after the birth of her first child. She sought out a therapist, Janice M. Jung. During the course of her therapy, Oostra disclosed to Jung the details of the abuse by Holstine. Oostra saw Jung approximately 50 times. It was only through therapy that Oostra was able to connect the difficulties she was having to the sexual abuse during her childhood.

In March 1994, Oostra commenced this action against Holstine for damages caused by the years of childhood sexual abuse. At the conclusion of trial, a jury awarded Oostra damages exceeding $348,000. The trial court entered judgment on that verdict and also granted Oostra's motion to order Holstine to register as a sex offender. The court stayed the order to register pending this appeal.

## I

### Statute of Limitations

Holstine claims that Oostra's cause of action is barred under RCW 4.16.340, the statute of limitations for actions involving allegations of childhood sexual abuse. We hold that this action was timely under that statute.

The effect of RCW 4.16.340 on this claim is a ques-

tion of statutory construction, which we review de novo.[1] Our objective is to determine the intent of the Legislature by examining the language of the statute.[2] We give words their plain meaning unless a contrary intent appears.[3] All provisions of an act are considered in relation to each other and, if possible, harmonized to ensure proper construction for each provision.[4] We seek to avoid strained, unlikely, or unrealistic consequences.[5] Likewise, statutes should not be construed "so as to render any portion meaningless or superfluous."[6]

RCW 4.16.340, the statute of limitations for civil actions based on childhood sexual abuse, provides in relevant part:

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> (a) Within three years of the act alleged to have caused the injury or condition;
>
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
>
> PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.
>
> (2) The victim need not establish which act in a series of

---

[1]*Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

[2]*Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 809, 756 P.2d 736 (1988).

[3]*In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986).

[4]*Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982).

[5]*State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[6]*Stone,* 110 Wn.2d at 810.

continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation.

Holstine argues that subsection (2) establishes a date of discovery for limitations purposes that is the date of the last of a series of abusive acts of a perpetrator and that the statute begins to run on that date. He claims that this subsection conflicts with paragraphs (a), (b), and (c) of subsection (1), which provide different triggering points for the statute to run. Citing *State ex rel. Graham v. San Juan County*,[7] he asserts that because subsection (2) is later in position within the statute, it controls and bars Oostra's action. She commenced this action more than three years after the last abusive act in 1987.

Holstine's argument fails because the two subsections are not in conflict. The Legislature stated its intent as follows:

(1) Childhood sexual abuse is a pervasive problem that affects the safety and well-being of many of our citizens.

(2) Childhood sexual abuse is a traumatic experience for the victim causing long-lasting damage.

. . . .

(4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.

. . . .

(6) The legislature enacted RCW 4.16.340 to clarify the application of the discovery rule to childhood sexual abuse cases. At that time the legislature intended to reverse the Washing-

---

[7]102 Wn.2d 311, 320, 686 P.2d 1073 (1984).

ton supreme court decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986).[8]

As the above quotation makes clear, the Legislature intended to deal with claims that arise from the problem of childhood sexual abuse. Moreover, it specifically intended to change the rule announced in *Tyson*, a repressed memory case. But it also intended to deal with a broader spectrum of matters than those characterized as repressed memory cases.

Subsection (2) by its plain language applies only where there is a "series of continuing sexual abuse or exploitation incidents" causing the injury for which a plaintiff seeks compensation.[9] Thus, for the purpose of establishing the date of the injury-causing act under RCW 4.16.340(1)(a), the relevant date is the last, for a plaintiff who experienced a series of acts of sexual abuse. Even then, the limitations period begins to run only on the date of the injury-causing act or the date the victim discovers the nexus between that act and the claimed injury, whichever is later.[10]

To read subsection (2) as Holstine urges would essentially eliminate the latter two provisions. That would be an impermissible construction. First, it would make paragraphs (b) and (c) of subsection (1) superfluous. Second, such a reading would frustrate the Legislature's intent to expand the statute of limitations for childhood sexual abuse to account for the difficulties of proof set forth in the Legislature's statement of intent. We therefore reject Holstine's interpretation.

Here, the abuse occurred over a nine-year period while Oostra was still a minor. The statute was tolled until she was eighteen. While a minor, she experienced problems, including alcoholism and attempted suicide. According to

---

[8]Laws of 1991, ch. 212, § 1, at 1084.

[9]RCW 4.16.340(2).

[10]RCW 4.16.340(1).

Oostra's unrefuted testimony, these problems were not at that time traced to the childhood abuse.

In October 1993, Oostra first saw Jung, the therapist. It was Jung who eventually diagnosed the tie between the abuse and the problems Oostra had experienced during childhood and continued to experience as an adult. Jung testified at trial that until Oostra began therapy, she did not recognize the connection between her problems and the sexual abuse.

■ We note that it was properly a question for the trier of fact to determine whether Oostra had timely filed this action. The trial court instructed the jury that Holstine had the burden of proving that Oostra "knew, or should have known, on or before March 29, 1991 [three years before she commenced her action], that the intentional sexual abuse by [Holstine] proximately caused the injury to [Oostra] for which the claim is brought." That instruction comports with the limitations set forth in RCW 4.16.340(1)(b) and (c) regarding a claimant's discovery of the nexus between acts of childhood sexual abuse and resulting injuries. The trial court did not err by so instructing the jury and rejecting Holstine's argument that the action was time-barred as a matter of law.

■ Holstine also argues for the first time in his reply brief that the trial court erred by rejecting his constitutional challenge to the limitations statute. We do not address arguments made for the first time in a reply brief.[11] Moreover, the references in that brief to the Fourteenth Amendment of the federal Constitution and article 1, section 3 of our state constitution are insufficient to constitute argument.

## II

### Sex Offender Registration

Holstine argues that the trial court erred by requiring

---

[11]*Yakima Valley (W. Valley) Fire Protection Dist. No. 12 v. City of Yakima,* 122 Wn.2d 371, 397, 858 P.2d 245 (1993).

him, in a civil proceeding, to register as a sex offender under RCW 9A.44.130. He was not convicted of a sex offense. He is correct in his reading of the statute.

Whether the statute contemplates a trial court making such an order is a question of law, subject to de novo review.[12] Neither party has cited any reported case that addresses the question of sex offender registration outside a criminal proceeding. Our research has failed to disclose any.

The sex offender registration statute provides that "[a]ny adult or juvenile residing in this state who *has been found to have committed* or has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence."[13] The italicized language creates an ambiguity. We must therefore construe the statute under the principles of statutory construction we previously articulated in this opinion.

The trial court concluded that, because of the italicized statutory language, the Legislature must have contemplated registration outside the context of a criminal conviction. The court reasoned that Holstine admitted under oath in open court that he had sexually abused his stepdaughter, so proof beyond a reasonable doubt was not at issue. Thus, the procedural setting, criminal or civil, was immaterial. We disagree.

We construe an act as a whole, harmonizing its provisions where possible.[14] The statutory structure and text surrounding the language in question indicate that the Legislature did not intend that adult registration occur without a conviction or adjudication for a sex offense. The other subsections that prescribe the mechanics of registration explicitly contemplate a conviction or juve-

---

[12]*Our Lady of Lourdes Hosp.*, 120 Wn.2d at 443.

[13]RCW 9A.44.130(1) (emphasis added).

[14]*Tommy P.*, 97 Wn.2d at 391.

nile adjudication.[15] Subsection (2) mandates that the offender provide various information to the sheriff of the county where the offender is registering. Among those disclosure items is the "crime for which convicted."[16] The list does not include a determination from a civil proceeding. If the Legislature had intended that result, it could have expressly stated so.

In addition, RCW 9A.44.130(3)(a) sweeps juvenile adjudications and adult convictions together as "convictions" for the purpose of registration deadlines. But the term "convictions" under the deadlines section does not include a finding by a civil court that a litigant has committed the conduct constituting a sexual offense. Indeed, the statute makes no provision for when such a civil litigant must register. Nor does RCW 9A.44.140 provide any means for a civil litigant's duty to register to end, though the statute does so for all criminal convictions and juvenile adjudications.

In *State v. Acheson*,[17] this court considered the meaning of the disjunctive statutory language in RCW 9A.44.130 providing for registration by any person "found to have committed" or "convicted of" a sex offense. That case addressed the question of whether Acheson, a juvenile sex offender, was subject to the registration statute. Acheson argued that because he was under the jurisdiction of the juvenile court, he could not be "convicted" and could only have committed an offense under the Juvenile Justice Act of 1977, not a felony under the Washington Criminal Code.[18] Rejecting that contention, the court concluded that the Legislature's intent by including the language "found

---

[15]RCW 9A.44.130(2)(e) (information provided when registering to include "crime for which convicted"); RCW 9A.44.130(3) (deadlines for registration).

[16]RCW 9A.44.130(2)(e).

[17]75 Wn. App. 151, 877 P.2d 217 (1994).

[18]*See* RCW 13.04.240 (providing that "[a]n order of court adjudging a child delinquent or dependent under the provisions of this chapter shall in no case be deemed a conviction of crime). *See also In re Frederick*, 93 Wn.2d 28, 604 P.2d 953 (1980).

to have committed" was to bring juvenile offenders within the scope of the registration statute.[19]

We hold that the sex offender registration statute applies only where there has been an adult criminal conviction or a juvenile adjudication for a sex offense. The trial court erred by ordering Holstine to register as a sex offender.

We affirm the judgment but reverse the order requiring Holstine to register as a sex offender.

COLEMAN and AGID, JJ., concur.

Review denied at 133 Wn.2d 1034 (1998).

---

[19]*Acheson*, 75 Wn. App. at 154.