2007 UT 25

Charles Matthew COLOSIMO, an individual, and Ralph Louis Colosimo, an individual, Plaintiffs and Petitioners,

v.

ROMAN CATHOLIC BISHOP OF SALT LAKE CITY dba Catholic Diocese of Salt Lake City, a Utah corporation sole; Archdiocese of San Francisco, a foreign entity; Oblates of St. Francis de Sales, a foreign entity; Judge Memorial High School Board of Financial Trustees, a Utah corporation; Thomas P. O'Neill, an individual; Francis J. Gross, an individual; W. Ivan Cendese, an individual; James F. Rapp, an individual; John Does I–V, individuals and/or entities, Defendants and Respondents.

No. 20050074.

Supreme Court of Utah.

March 13, 2007.

Larry R. Keller, Felise L. Thorpe Moll, Salt Lake City, for Charles and Ralph Colosimo.

Matthew F. McNulty, III, Mark A. Wagner, Tacy A. Hartman, Salt Lake City, for Roman Catholic Bishop, Judge Memorial.

Tim Dalton Dunn, Stephen D. Alderman, Salt Lake City, for Archdiocese of San Francisco.

Russell C. Fericks, Mark L. McCarty, Zachary E. Peterson, Salt Lake City, for Oblates of St. Francis de Sales, Thomas O'Neill, Francis Gross, W. Ivan Cendese.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Ralph Louis Colosimo and Charles Matthew Colosimo filed suit against Judge Memorial High School and its former administrators (collectively, "Judge"); the Salt Lake Diocese, Judge's Board of Financial Trustees, the Oblates of St. Francis de Sales, the Archdiocese of San Francisco (collectively, the "institutional defendants"); and individual defendant James F. Rapp, a former teacher at Judge. The Colosimos seek damages arising from their alleged sexual abuse by Rapp more than three decades ago. The district court entered default judgment against Rapp, but dismissed the claims against the institutional defendants on statute of limitations grounds. The Colosimos appealed, arguing that the discovery rule tolled the running of the statute until they became aware of their claims against the institutional defendants. The court of appeals affirmed the dismissal. We granted certiorari to determine whether the Colosimos' awareness of the sexual abuse entailed a reasonable knowledge of, or a duty to inquire about, the facts necessary to support their claims that the institutional defendants knew of the abuse and failed to adequately supervise Rapp or prevent the abuse. For the reasons detailed below, we conclude that it did and therefore affirm the dismissal of the Colosimos' claims.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Ralph and Charles allege that Rapp sexually abused them on repeated occasions from approximately 1970 to 1975. At the time of the alleged abuse, Rapp was a Catholic priest, a member of the Oblates, and a staff member of Judge. The Diocese had supervisory authority over Rapp in his teaching capacity, apparently sharing this responsibility with the Oblates, a group of Catholic priests who also supervised Judge. The Colosimos allege that the Archdiocese also "supervises and exerts control over the Diocese," although the Archdiocese disputes this claim.

¶3 Rapp allegedly began abusing Ralph in late 1970 or early 1971 when Ralph was a minor student at Judge, and the abuse allegedly continued after Ralph turned eighteen on September 20, 1971. Through Ralph, Rapp was introduced to the Colosimo family and allegedly began sexually abusing Ralph's younger brother Charles, sometimes while brandishing a gun. At some point in 1975, Rapp admitted to Ralph that he was a pedophile and that he was abusing Charles.

¶4 The Colosimos knew that they had been abused by Rapp and that they had suffered some immediate injury as a result. Ralph alleges, however, that he repressed the memory of most instances of the abuse until a professional therapist allowed "him to recover his memories and to understand the causal connection between the assaults and his injuries." Charles never forgot the abuse, but maintains that he "was unaware of the connection between the abuse and his injuries until he began therapy years later."

¶5 At the time of the abuse, the Colosimos knew that Rapp was a Roman Catholic priest, a teacher, and an Oblate and that these roles were intertwined in his position as an employee of Judge. Despite this knowledge, the Colosimos made no inquiry or investigation during the statutory period regarding any potential claims against any of the institutional defendants.

¶6 In May 2002, the *Washington Post* published an article detailing Rapp's history of sexually abusing young boys. It indicated that even though Judge students had complained about Rapp, school authorities had taken no apparent action against him. The article suggested that Rapp simply moved from state to state until an Oklahoma court eventually convicted him of two counts of lewd molestation. Upon reading the article, the Colosimos realized that the institutional defendants may have had knowledge of Rapp's pedophilic actions.

¶7 On February 18, 2003, the Colosimos filed suit against Rapp and the institutional defendants, asserting claims for aggravated sexual assault and battery, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, invasion of privacy, breach of fiduciary duty, fraud, and false imprisonment. The Colosimos allege that the institutional defendants knew that Rapp had sexually abused children prior to abusing the Colosimos, yet "deliberately concealed from [the Colosimos], other Judge students, and parishioners [their] knowledge of" Rapp's abusive history in order to protect their own interests. The institutional defendants responded with motions to dismiss, arguing that the statute of limitations had run.

¶8 The Colosimos opposed the motions to dismiss, contending that the discovery rule tolled the statute of limitations. In the alternative, they requested additional time to conduct discovery to obtain the evidence needed to resist the motions to dismiss. After considering the pleadings, memoranda, and affidavits on file, the district court treated the motions to dismiss as summary judgment motions and dismissed the Colosimos' complaint because it was not filed within the limitations period.

¶9 The Colosimos appealed to this court, which transferred the appeal to the court of appeals. The court of appeals affirmed the district court's dismissal, reasoning that the Colosimos' claims "do not fall within any of the recognized situations in which the discovery rule is applicable because [the Colosimos] could have brought their claims within the limitation periods based upon the available

undisputed facts."[1]

¶ 10 This court granted the Colosimos' petition for certiorari. We have jurisdiction pursuant to Utah Code section 78-2-2(3)(a).

## STANDARD OF REVIEW

¶ 11 On certiorari review, this court reviews the decision of the court of appeals, not the decision of the district court.[2] "The applicability of a statute of limitations and ... the discovery rule are questions of law, which we review for correctness."[3] But the application of the discovery rule also "involves a subsidiary factual determination—the point at which a person reasonably should know that he or she has suffered a legal injury."[4] Therefore, while we review the court of appeals' decision for correctness, we apply a summary judgment standard of review to the subsidiary factual determination, which requires us to "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party."[5]

## ANALYSIS

¶ 12 The Colosimos contend that summary judgment was erroneously granted because the running of the limitations period was tolled by the discovery rule. Specifically, they argue that their awareness of their sexual abuse put them on neither actual nor inquiry notice of potential claims against the institutional defendants. It is this issue on which we granted certiorari.

¶ 13 We begin by explaining that the discovery rule can toll the statute of limitations when there is (1) a statutory tolling

provision, (2) an exceptional circumstance, or (3) fraudulent concealment. We then proceed to examine whether the limitations period on the Colosimos' claims was tolled for any of these reasons. We conclude that the period was not tolled because the Colosimos' knowledge of their abuse and the relationship between Rapp and the institutional defendants was sufficient to put them on inquiry notice of their claims. We therefore affirm the court of appeals.

## I. THE COLOSIMOS ARE NOT ELIGIBLE FOR APPLICATION OF THE DISCOVERY RULE

¶ 14 As a general matter, "a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action."[6] Certain exceptions, however, operate to toll the statute. For example, in the case of a plaintiff who is under the age of majority or mentally incompetent, the statute of limitations will be tolled until the plaintiff is free from the disability.[7] Because the Colosimos were minors when Rapp began abusing them, the statute was tolled until they turned eighteen. The Colosimos argue that the discovery rule continued to toll the statute even after they reached the age of majority. We therefore look to the discovery rule to determine whether the Colosimos' claims are time-barred.

¶ 15 The discovery rule tolls a statute of limitations "until the discovery of facts forming the basis for the cause of action."[8] It operates either when provided for by statute (the "statutory discovery rule") or when required by equity (the "equitable discovery

---

1. *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2004 UT App 436, ¶ 20, 104 P.3d 646.

2. *State v. Warren*, 2003 UT 36, ¶ 12, 78 P.3d 590.

3. *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742.

4. *Id.*

5. *Dowling v. Bullen*, 2004 UT 50, ¶ 7, 94 P.3d 915.

6. *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (internal quotation marks omitted).

7. Utah Code Ann. § 78-12-36 (2002) (indicating that "[i]f a person entitled to bring an action ... is at the time the cause of action accrued, either under the age of majority or mentally incompetent and without a legal guardian, the time of the disability is not a part of the time limited for the commencement of the action"); *see also Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 38, 70 P.3d 904 (explaining that an action is tolled until a plaintiff reaches the age of majority).

8. *Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741 (internal quotation marks omitted).

rule").[9] The statute may be tolled under the equitable discovery rule when either exceptional circumstances or the defendant's fraudulent concealment prevents the plaintiff from timely filing suit.[10] We accordingly address whether the limitations period on the Colosimos' claims was tolled because of an applicable statutory tolling provision, exceptional circumstances, or fraudulent concealment. In so doing, we rely primarily on Utah law. Because this issue is one of first impression in Utah, however, we also look to other jurisdictions for guidance.[11]

### A. The Statutory Discovery Rule

¶ 16 The statutory discovery rule applies where "a relevant statute of limitations, by its own terms, mandates application of the discovery rule."[12] The statutes of limitation applicable to the Colosimos' claims range from one to four years.[13] But only the statute applicable to the Colosimos' fraud claim contains a discovery provision. Utah Code section 78–12–26(3) provides that actions for fraud must be brought within three years, "except that the cause of action in such case does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[14] The Colosimos argue that this provision, which is widely interpreted as tolling the running of the limitations period until a plaintiff "either discover[s] or should have discovered his or her cause of action," operates to toll the statute on their fraud claims.[15]

¶ 17 A plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud "or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him."[16] We have particularly emphasized the importance of the diligence requirement, stating that "[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge"[17] and that "[a] party is required to make inquiry if his findings would prompt further investigation."[18] In other words, if a party has knowledge of some underlying facts, then that party must reasonably investigate potential causes of action because the limitations period will run.[19]

¶ 18 In this case, the Colosimos knew that they had been abused and that Rapp was the abuser. They also knew or were constructively on notice of the relationships between Rapp and the institutional defendants and of the duties owed to them by those institutional defendants. Specifically, the Colosimos knew that Rapp was a priest, an Oblate, and a teacher at Judge. Moreover, the relationships between Rapp and the various institutional defendants and the oversight functions that the institutional defendants allegedly exercised over Rapp were either known to the Colosimos or discoverable during the limitations period. This knowledge was sufficient to trigger a duty to inquire into potential claims against the institutional defendants. Because the Colosimos failed to do so, they cannot now allege that they lacked knowledge of their claims. We accordingly hold that Utah Code section 78–12–26(3) did not toll the limitations period on the Colosimos' fraud claims.

9. *Id.* ¶¶ 21, 24.

10. *Id.* ¶ 25.

11. *Arndt v. First Interstate Bank of Utah*, 1999 UT 91, ¶ 17, 991 P.2d 584.

12. *Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741.

13. *See* Utah Code Ann. §§ 78–12–25(3), –26(3), –29(4) (2002).

14. *Id.* § 78–12–26(3).

15. *Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741; *see also Baldwin v. Burton*, 850 P.2d 1188, 1196 (Utah 1993).

16. *Baldwin*, 850 P.2d at 1196 (internal quotation marks omitted); *see also Carson*, 2005 UT 14, ¶ 22, 108 P.3d 741 (indicating that the statute of limitations begins to run "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action").

17. *Baldwin*, 850 P.2d at 1196.

18. *Id.* at 1197 n. 43.

19. *Id.* at 1197 ("[I]t is not necessary for a claimant to know every fact about his fraud claim before the statute begins to run.").

### B. Exceptional Circumstances

¶ 19 We next consider the Colosimos' claim that the applicable statutes of limitation were subject to tolling under the exceptional circumstances doctrine. Under this doctrine, the limitations period is tolled "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant ... prevented the discovery of the cause of action."[20] For this exception to apply, "an initial showing must be made that the plaintiff did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within [the limitations period]."[21]

¶ 20 The Colosimos assert that they are entitled to application of the exceptional circumstances doctrine for two reasons. First, they argue that their lack of knowledge regarding the causal connection between the abuse and their injuries constitutes an exceptional circumstance. Second, they argue that the horrendous nature of child sexual abuse constitutes an exceptional circumstance that justifies tolling the statute indefinitely in those instances where the fact of abuse is clearly and convincingly corroborated.

### 1. The Causal Connection Theory

¶ 21 We first consider the Colosimos' claim that their lack of knowledge regarding the causal connection between the abuse and their injuries constitutes an exceptional circumstance. Although Utah courts have not directly addressed this question, they have analyzed cases involving repression of sexual abuse, and it is with these cases that we begin our analysis.

¶ 22 Utah courts have consistently held that the statute of limitations in child sexual abuse cases can be tolled only in narrow circumstances. For example, in *Olsen v. Hooley,* we held that a plaintiff who has repressed *all* memory of sexual abuse cannot be deemed to have reasonable knowledge of the abuse.[22] Under such circumstances, the limitations period is subject to tolling. Tolling is appropriate in such cases because "[r]epressing the memory of operative facts is, in effect, not knowing or being aware of those facts."[23] But we limited our holding by "emphasiz[ing] that [the] case involve[d] a plaintiff who allege[d] that she totally repressed her memory; it [did] not involve a plaintiff who remembered the abuse but did not realize until later that the abuse caused the psychological harm suffered."[24] In other words, even though we implicitly recognized that victims of child sexual abuse may often be unable to causally connect their abuse to their injuries, we were unwilling to suggest that such an inability would toll the statute.

¶ 23 Similarly, in *O'Neal v. Division of Family Services,* we refused to toll the statute in a case involving a plaintiff who had been sexually abused as a teenager and was aware of the abuse, but who had psychologically been unable to reveal the abuse until many years later.[25] We reasoned that "[u]nder our discovery rule cases, his knowledge of the facts underlying the cause of action precludes his reliance on that rule" because his "inability to reveal the abuse [was] not the same as his not knowing of the abuse."[26] We accordingly held that he had failed to diligently pursue his claim.[27]

¶ 24 In *Burkholz v. Joyce,* we examined whether the discovery rule tolls the statute of limitations when, "during the limitations period, the plaintiff's knowledge of the operative facts underlying his cause of action is interrupted by a period of psychological repression during which [the] plaintiff is un-

---

20. *Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 25, 108 P.3d 741 (internal quotation marks omitted).

21. *Burkholz v. Joyce,* 972 P.2d 1235, 1237 (Utah 1998) (internal quotation marks omitted).

22. 865 P.2d 1345, 1348 (Utah 1993).

23. *Id.*

24. *Id.* at 1349.

25. 821 P.2d 1139, 1140 (Utah 1991).

26. *Id.* at 1145.

27. *Id.*

aware of such facts." [28] As in *O'Neal,* we refused to toll the statute of limitations, concluding that such a plaintiff cannot make the initial showing that he "did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within [the limitations] period." [29]

¶ 25 Courts from other jurisdictions have even more explicitly refused to toll statutes of limitation in cases where plaintiffs have been unable to causally connect their knowledge of being sexually abused with their injuries. For example, in *Parks v. Kownacki,* a plaintiff was abused by a priest when she was a minor, and although she was aware of the abuse from the time it occurred, she was not aware of the connection between the abuse and her injuries. [30] The Illinois Supreme Court held that because she had a reasonable knowledge of the abuse, her "failure to understand the connection between the abuse and other injuries [did] not toll the statute of limitations." [31]

¶ 26 Similarly, in *Kraft v. St. John Lutheran Church,* the Eighth Circuit, applying Nebraska law, refused to toll the statute of limitations for a plaintiff who allegedly had been abused by a teacher at a religious school. [32] That court reasoned that the plaintiffs' mental injuries did "not render him incapable of understanding his legal rights and acting to protect them," and "[t]he fact that [the plaintiff] may not have actually drawn the connection at that point or may not have understood the extent of his damages did not prevent the statute of limitations from running." [33]

¶ 27 These courts were unwilling to adopt a causal connection rule because their precedent clearly foreclosed application of the discovery rule where a victim was sufficiently aware of the underlying facts to know that a tort had been committed. [34] Because the abuse victims in these cases had not completely repressed knowledge of the abuse, even though they were unable to fully connect the abuse to their injuries, they were deemed to have knowledge of their claims, thus preventing application of the discovery rule. [35] Utah precedent evidences a similar reluctance to apply the discovery rule absent complete repression of all memory of the abuse. [36] We therefore conclude that the exceptional circumstances version of the discovery rule does not operate to toll the limitations period on a claim when a victim was aware of the abuse, even though he was unable to causally connect the abuse to his injuries.

¶ 28 The Colosimos attempt to avoid this conclusion by relying on the case of *Foil v. Ballinger,* where we stated that "[w]e see no basis for making a legal distinction between having no knowledge of an injury … and no knowledge that a known injury was caused by unknown negligence." [37] But the Colosimos' "reliance on *Foil* is misplaced" [38] because *Foil* involved a claim for medical malpractice under the Utah Health Care Malpractice Act, which contains a provision explicitly tolling the limitations period until a plaintiff is aware of his injury. [39]

¶ 29 There is no similar statutory basis for tolling the limitations period in this

---

**28.** 972 P.2d 1235 (Utah 1998).

**29.** *Id.* at 1237 (internal quotation marks omitted).

**30.** 193 Ill.2d 164, 249 Ill.Dec. 897, 737 N.E.2d 287, 294 (2000).

**31.** *Id.* at 295.

**32.** 414 F.3d 943, 945 (8th Cir.2005).

**33.** *Id.* at 948; *see also Cevenini v. Archbishop of Wash.,* 707 A.2d 768, 772 (D.C.1998) (refusing to toll the statute of limitations "[b]ecause [the plaintiff] was aware of his injuries, their cause, and some evidence of wrongdoing").

**34.** *See Kraft,* 414 F.3d at 946–47; *Cevenini,* 707 A.2d at 772; *Parks,* 249 Ill.Dec. 897, 737 N.E.2d at 294–95.

**35.** *See Kraft,* 414 F.3d at 947; *Cevenini,* 707 A.2d at 772; *Parks,* 249 Ill.Dec. 897, 737 N.E.2d at 294–95.

**36.** *See Burkholz v. Joyce,* 972 P.2d 1235 (Utah 1998).

**37.** 601 P.2d 144, 148 (Utah 1979).

**38.** *Colosimo v. Roman Catholic Bishop of Salt Lake City,* 2004 UT App 436, ¶ 30, 104 P.3d 646.

**39.** Utah Code Ann. § 78–14–4 (1976).

case. Although the legislature passed a statute in 1992 that tolls the running of the limitations period in child sexual abuse cases until the victim knows or reasonably should know that his injury was caused by the abuse,[40] that statute does not apply retroactively and so is not applicable here.[41]

¶ 30 In fact, many of the cases the Colosimos cite in support of their causal connection theory[42] are from jurisdictions that have based their tolling of the limitations periods on applicable statutes.[43] For example, a Washington state statute indicates that the limitations period in child sexual abuse cases should be brought " '[w]ithin three years of the time the victim discovered or reasonably should have discovered that the injury or condition was *caused* by said act.' "[44] Thus, in these cases, the courts were not creating new tolling rules; they were merely applying statutory tolling provisions. Lacking a statutory basis, we decline to hold that a victim's inability to tie the abuse to his injury constitutes an exceptional circumstance under the discovery rule.

¶ 31 Because the Colosimos do not allege that they repressed all knowledge of their abuse, they had knowledge of the operative facts giving rise to their claims. Their inability to connect the abuse with their injuries does not render them eligible for application of the exceptional circumstances version of the discovery rule.

2. The Clear and Convincing Requirement

 ¶ 32 The Colosimos also argue that the horrific nature of child sexual abuse con-

stitutes an exceptional circumstance justifying tolling. The Colosimos urge us to follow the lead of the Nevada Supreme Court in *Petersen v. Bruen*[45] and eliminate the statute of limitations for all child sexual abuse cases where there is clear and convincing evidence of the abuse. Relying on the deep psychological injuries that child abuse survivors encounter as adults, the Nevada Supreme Court held that "[i]n those instances where the *fact* of abuse is clearly and convincingly corroborated, we perceive no compelling need or policy which justifies the intervention of a period of limitations to eliminate the right of [child sexual abuse] victims to seek recovery against their abusers."[46]

¶ 33 We recognize the horrific effects of child abuse and the serious problems that victims of abuse face as adults as they attempt to understand the causal connection between their injuries and the abuse. But we nevertheless decline to adopt the *Petersen* rule because it is contrary to Utah's statutory scheme. In 1992, the Utah legislature passed a statute specifically addressing the limitations period in cases of child sexual abuse.[47] Although this statute does not apply retroactively and is inapplicable here,[48] it nevertheless reveals the legislature's intent that child sexual abuse cases be subject to a statute of limitations. In light of this, it would be inappropriate for us to conclude that pre–1992 claims of child sexual abuse are immune from a limitations period.[49]

¶ 34 Were we to adopt the Nevada rule, we would effectively be extending greater rights

---

40. *Id.* § 78–12–25.1 (2002).

41. *Roark v. Crabtree*, 893 P.2d 1058, 1063 (Utah 1995) (holding that a plaintiff who had been aware of sexual abuse but had been unable to understand the causal connection between the abuse she suffered and her injuries could not rely on Utah Code section 78–12–25.1 to retroactively toll the limitations period).

42. *See, e.g., Ross v. Garabedian*, 433 Mass. 360, 742 N.E.2d 1046, 1048 (2001); *Cosgriffe v. Cosgriffe*, 262 Mont. 175, 864 P.2d 776, 780 (1993); *Osland v. Osland*, 442 N.W.2d 907, 908–09 (N.D. 1989); *Oostra v. Holstine*, 86 Wash.App. 536, 937 P.2d 195, 197 (1997).

43. *Ross*, 742 N.E.2d at 1048; *Cosgriffe*, 864 P.2d at 780; *Oostra*, 937 P.2d at 197.

44. *Oostra*, 937 P.2d at 197 (quoting Wash. Rev. Code § 4.16.340) (emphasis added).

45. 106 Nev. 271, 792 P.2d 18, 23 (1990).

46. *Id.*

47. Utah Code Ann. § 78–12–25.1 (2002).

48. *Roark*, 893 P.2d at 1063.

49. *See* 2B Norman J. Singer, *Statutes and Statutory Construction* § 53:01 ("Harmony and consistency are positive values in a legal system because they serve the interests of impartiality and minimize arbitrariness.... In fact, courts have been said to be under a duty to construe statutes harmoniously where that can reasonably be done.").

to pre–1992 victims of child sexual abuse than to those who were victimized after 1992. In other words, pre–1992 victims could bring claims indefinitely because their claims would not be subject to any statute of limitations; whereas post–1992 victims would be bound by the limitations period contained in Utah Code section 78–12–25.1. It would be unwise to create such an inconsistent result, especially where the legislature has expressed the view that events which happened decades ago should not become actionable.[50] Should the legislature wish to modify or abolish the limitations period for pre–1992 victims of child sexual abuse, it may do so, but it is not our role to judicially abrogate applicable statutory limitations.[51]

¶ 35 Moreover, it would be particularly unwise for us to abolish the limitations period in this case where the claims at issue are against institutional defendants that were not the actual perpetrators of the abuse. The assumption that the defendant is the abuser underlies the *Petersen* opinion and the arguments of legal scholars who advocate abolishing limitations periods in child sexual abuse

cases.[52] The claims at issue on this appeal, however, have been lodged against nonperpetrator institutional defendants. Thus, rationales of punishment and allowing "[child sexual abuse] victims to seek recovery against their abusers" [53] apply with less force and fail to overcome the policies underlying statutes of limitation.[54] As the Rhode Island Supreme Court indicated in *Kelly v. Marcantonio*, a sex abuse case where a Catholic diocese was sued for the actions of some of its priests, the court was not able to find any "persuasive policy" justification for contravening legislative intent and disregarding the statute of limitations in cases against nonperpetrator defendants.[55]

¶ 36 We similarly can discern no persuasive justification for eliminating the statute of limitations in this case. Although we recognize that child abuse has devastating consequences, prior precedent, legislative intent, and the fact that this case involves nonperpetrator institutional defendants all counsel against eliminating the statute of limitations.[56] "While this outcome may seem

50. *See Roark*, 893 P.2d at 1061–62 (indicating that during house debates "Representative Valentine questioned, 'If we pass this bill, now, does that mean that some event that occurred 40 or 50 years ago, even though under our present statute would not be actionable, now becomes actionable?' ").

51. *See Avis v. Bd. of Review*, 837 P.2d 584, 587 (Utah Ct.App.1992) ("State legislatures possess the discretion to enact statutes of limitations, and these statutes are presumptively constitutional."); *see also S.V. v. R.V.*, 933 S.W.2d 1, 26 (Tex.1996) (indicating that it is the role of legislatures to decide how statutes of limitations should be applied in child sexual abuse cases because they can appreciate "all the interests affected").

52. *See, e.g., Petersen v. Bruen*, 106 Nev. 271, 792 P.2d 18, 20 (1990); *Debbie Reynolds Prof'l Rehearsal Studios v. Superior Court*, 25 Cal.App.4th 222, 30 Cal.Rptr.2d 514, 520 (1994) (indicating that a liberalized statute of limitations for child abuse victims applies only to cases against individual perpetrators); Michael Krauss, Note, *Fundamental Fairness in Child Sexual Abuse Civil Litigation*, 8 Stan. L. & Pol'y Rev. 205 (1997). *But see* Daniel T. Kajunski, Comment, *Civil Procedure—Discovery Rule Inapplicable to Nonperpetrator Defendants in Cases of Childhood Sexual Abuse—Kelly v. Marcantonio, 678 A.2d 873 (R.I. 1996)*, 31 Suffolk U.L.Rev. 751 (1998).

53. *Petersen*, 792 P.2d at 23.

54. *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 28, 108 P.3d 741 (indicating that the policy underlying the statute of limitations is "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" (internal quotation marks omitted)).

55. 678 A.2d 873, 876, 878 (R.I.1996); *see also Debbie Reynolds*, 30 Cal.Rptr.2d at 520 (indicating that the legislature did not intend that the statutory discovery rule would apply to nonperpetrator defendants); *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 602 (Colo.Ct.App.2000) (same). *But see Almonte v. N.Y. Med. Coll.*, 851 F.Supp. 34, 37 (D.Conn.1994) (indicating that an extended limitations period for child abuse claims applies to nonperpetrators as well as perpetrators).

56. *See Beaver County v. Prop. Tax Div.*, 2006 UT 6, ¶ 32, 128 P.3d 1187 ("We have counseled that courts should be cautious in tolling a statute of limitations; liberal tolling could potentially cause greater hardships than it would ultimately relieve. The doctrine of equitable tolling should not be used simply to rescue litigants who have inexcusably and unreasonably slept on their rights." (citation and internal quotation marks omitted)).

harsh" because it allows some abuse to go uncompensated, "it is the necessary result of having limitations periods and the accompanying benefit of finality for which these statutes were designed." [57] We therefore decline to follow the Nevada approach. Instead, we hold that a plaintiff's ability to establish the fact of abuse by clear and convincing evidence does not constitute an exceptional circumstance under the discovery rule.

## C. Fraudulent Concealment

¶ 37 We next examine whether the Colosimos can rely on the fraudulent concealment doctrine to toll the statute. The Colosimos allege that they are entitled to rely on this doctrine because the institutional defendants concealed their responsibility for the abuse. Because a plaintiff must diligently investigate his claim to prevail under a theory of fraudulent concealment, we examine whether the Colosimos' knowledge· of the abuse and of Rapp's connection with the institutional defendants imposed on them a duty to investigate potential claims against the institutional defendants.

¶ 38 We recently articulated the requirements of the fraudulent concealment version of the discovery rule in *Russell Packard Development, Inc. v. Carson.*[58] Under the fraudulent concealment doctrine, Utah courts toll the running of the limitations period if "a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct." [59] In order to qualify for application of the fraudulent concealment doctrine,

> a plaintiff must demonstrate either (1) that the plaintiff neither knew nor reasonably should have known of the facts underlying his or her cause of action before the fixed limitations period expired; or (2) that notwithstanding the plaintiff's actual or constructive knowledge of the facts underlying his or her cause of action within the limita-

tions period, a reasonably diligent plaintiff may have delayed in filing his or her complaint until after the statute of limitations expired.[60]

¶ 39 In *Carson,* we emphasized that a party seeking to take advantage of the rule must act in a reasonable and diligent manner.[61] We also suggested that "inquiry notice operates differently 'when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action.' " [62] In such cases, once a plaintiff has made a prima facie showing of fraudulent concealment, the

> plaintiff will be charged with constructive notice of the facts forming the basis of a cause of action only at that point at which a plaintiff, reasonably on notice to inquire into a defendant's wrongdoing, would have, with due diligence, discovered the facts forming the basis for the cause of action despite the defendant's efforts to conceal it.[63]

¶ 40 Relying on this language, the Colosimos assert that their failure to inquire about possible causes of action against the institutional defendants should be excused because any such inquiry would have been futile. We disagree. The language on which the Colosimos rely does not excuse a plaintiff's lack of inquiry whenever he alleges that any inquiry would have been futile. Rather, it serves only to illustrate the concept that a plaintiff must be reasonably diligent in pursuing his claims. Thus, "in cases of fraudulent concealment, a plaintiff will not automatically be charged with constructive notice of a claim simply by virtue of being on inquiry notice of it"; [64] instead, determining when a plaintiff knew or should have known of a cause of action requires evaluating "the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading con-

---

57. *Id.* ¶ 46.

58. 2005 UT 14, ¶¶ 25–43, 108 P.3d 741.

59. *Id.* ¶ 25 (internal quotation marks omitted).

60. *Id.* ¶ 44.

61. *Id.* ¶ 26.

62. *Id.* ¶ 38 (quoting *Berenda v. Langford,* 914 P.2d 45, 51 (Utah 1996)).

63. *Id.* (citing *Berenda,* 914 P.2d at 51–52).

64. *Id.* ¶ 38 n. 7.

duct." [65] This suggests that before a plaintiff may rely on the fraudulent concealment doctrine, he must have actually made an attempt to investigate his claim and that such an attempt must have been rendered futile as a result of the defendant's fraudulent or misleading conduct.

¶ 41 In *Carson*, we repeatedly described the requirements of the fraudulent concealment doctrine using terms such as "reasonableness" and "diligence." And we emphasized that although a plaintiff's cause of action does not begin to run until "a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action," [66] a plaintiff cannot idly wait for a claim to present itself; rather, a plaintiff must act with reasonable diligence to discover "the facts constituting his or her cause of action." [67] There is nothing in *Carson* to suggest that a plaintiff who was aware of tortious conduct but undertook no inquiry or investigation would be excused from the diligence requirement merely by speculating that any inquiry or investigation would have been futile.

¶ 42 This reading of *Carson* is bolstered by *Berenda v. Langford*, [68] a case on which *Carson* relied. *Berenda* contains language similar to that contained in *Carson* and on which the Colosimos rely. [69] But *Berenda* uses this language only in its general description of the fraudulent concealment rule. [70] Although it recognizes that some federal cases have interpreted the fraudulent concealment rule "to excuse the diligence requirement when … successful concealment would fool even the most diligent hypothetical plaintiff," *Berenda* specifically declines to adopt the futility doctrine or other "such artificial legal subrules." [71]

¶ 43 In *Berenda*, we reasoned that "questions of when a plaintiff should reasonably begin inquiring about the defendant's wrongdoing and whether, once on notice, the plaintiff has acted with reasonable diligence to discover the facts forming the basis of the cause of action are all highly fact-dependent legal questions." [72] Even though such issues are "highly fact-dependent legal questions," [73] this does not mean that plaintiffs can avoid summary judgment simply by asserting that it would have been futile for them to inquire about potential claims. Indeed, if a plaintiff has made no inquiry, there can generally be no factual basis on which to conclude that an inquiry would have been futile. Because it would be pure speculation to conclude that the plaintiff's inquiries would have been futile, " 'the facts underlying the allegation of fraudulent concealment' " could not survive summary judgment. [74]

¶ 44 Other jurisdictions have similarly held that plaintiffs with knowledge of underlying facts must reasonably investigate their claims in order to rely on the fraudulent concealment doctrine. [75] They have emphasized that a defendant's mere silence in the face of a plaintiff's failure to use reasonable diligence in investigating a claim is insuffi-

---

**65.** *Id.* ¶ 26.

**66.** *Id.* ¶ 22.

**67.** *Id.* ¶ 26.

**68.** 914 P.2d 45 (Utah 1996).

**69.** *See id.* at 52 (indicating that "the fraudulent concealment version of the discovery rule requires a determination of (i) when a plaintiff would reasonably be on notice to inquire into a defendant's wrongdoing despite the defendant's efforts to conceal it; and (ii) whether a plaintiff, once on notice, would reasonably have, with due diligence, discovered the facts forming the basis of the cause of action despite the defendant's efforts to conceal those facts").

**70.** *Id.* at 52–53.

**71.** *Id.* at 53.

**72.** *Id.; see also Carson*, 2005 UT 14, ¶ 39, 108 P.3d 741.

**73.** *Carson*, 2005 UT 14, ¶ 39, 108 P.3d 741 (internal quotation marks omitted).

**74.** *Id.* (quoting *Berenda*, 914 P.2d at 54).

**75.** *See, e.g., Helleloid v. Indep. School Dist. No. 361*, 149 F.Supp.2d 863, 869 (D.Minn.2001); *Mark K. v. Roman Catholic Archbishop of L.A.*, 67 Cal.App.4th 603, 79 Cal.Rptr.2d 73, 79 & n. 11 (1998); *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 774 (D.C.1998); *Meehan v. Archdiocese of Phila.*, 2005 PA Super 91, ¶¶ 22–25, 870 A.2d 912.

cient evidence of fraudulent concealment to warrant tolling the statute of limitations. For example, in *Helleloid v. Independent School District Number 361*, a teacher sexually abused a mentally disabled student, yet the school district hid its knowledge of the abuse from the student's parents.[76] Even though the court recognized that statute of limitations questions in a fraudulent concealment context are normally "questions of fact, unsuited for summary judgment," [77] the court nonetheless refused to toll the limitations period because the parents had not put forth "*any* effort" to inquire of the district.[78] It reasoned that the "doctrine of fraudulent concealment [is] not intended to protect those who are not vigilant in advancing their legal claims," [79] and that "[i]n no case ... is mere silence or failure to disclose sufficient in itself to constitute fraudulent concealment." [80]

¶ 45 Similarly, in *Cevenini v. Archbishop of Washington*, a priest sexually abused the plaintiffs when they were minors.[81] But the court refused to toll the statute of limitations, reasoning that the plaintiffs had failed to allege any "affirmative acts of concealment" and that it was "unwilling to hold that a failure to disclose information that has not even been requested constitutes fraudulent concealment." [82] It further held that even if there had been fraudulent concealment, this still would not toll the limitations period because "fraudulent concealment is available only to a plaintiff who has exercised due diligence in the pursuit of his cause," and these plaintiffs had not taken any actions

that would meet the requirements of due diligence.[83]

¶ 46 A California court in *Mark K. v. Roman Catholic Archbishop of Los Angeles* similarly refused to toll the statute of limitations on the plaintiffs' claims where the plaintiffs were aware of the underlying abuse but had made no effort to investigate their claims.[84] It reasoned that where the plaintiffs had not investigated their claims, it would not be appropriate for the court to toll the limitations period.[85]

¶ 47 Plaintiffs are not excused from the due diligence requirement simply by alleging that any investigation into the culpability of the institutional defendants would have been futile. Where a plaintiff is aware he has been abused and knows the identity of the abuser and the relationship between the abuser and any institutional defendants, he must undertake a reasonable investigation into claims against the institutional defendants before he can qualify for tolling under the fraudulent concealment doctrine.[86]

¶ 48 In summary, we recognize a futility component to the fraudulent concealment doctrine in only two narrow circumstances. First, where a plaintiff has made inquiry and then been misled by the defendants, he has raised sufficient evidence of the futility of further investigation to survive summary judgment.[87] But it is the existence of the inquiry and the defendant's response that provides the trier of fact with the evidence necessary to evaluate whether there was fraudulent concealment and whether the plaintiff reasonably investigated his claims.

76. 149 F.Supp.2d at 864.

77. *Id.* at 869.

78. *Id.* at 870 (emphasis added).

79. *Id.* at 871 (internal quotation marks omitted).

80. *Id.* at 869 (internal quotation marks omitted).

81. 707 A.2d at 770.

82. *Id.* at 774.

83. *Id.; see also Meehan*, 2005 PA Super 91, ¶¶ 22–25, 870 A.2d 912 (indicating that there was not any fraudulent concealment because the

plaintiffs had not questioned the Diocese). *Aquilino v. Phila. Catholic Archdiocese*, 2004 PA Super 339, ¶ 19, 884 A.2d 1269 (indicating that the plaintiff could not use the concealment doctrine to toll the limitations period on his claims because he had "failed to aver that he questioned the Archdiocese about his abuser at any time" (internal quotation marks omitted)).

84. 79 Cal.Rptr.2d at 79.

85. *Id.* at 79 & n. 11.

86. *See Meehan*, 2005 PA Super 91, ¶ 25, 870 A.2d 912.

87. *See id.*

¶ 49 Second, a plaintiff's lack of inquiry may be excused where the defendant has affirmatively concealed from the plaintiff the facts necessary to put the plaintiff on inquiry notice. A plaintiff cannot be expected to inquire about the existence of a claim that is entirely concealed from him when there is nothing to put him on inquiry notice. Such was the situation in *Carson*, where during much of the limitations period, the plaintiffs had neither knowledge that a tort had been committed nor knowledge of facts sufficient to place them on inquiry notice.[88] Because they lacked such knowledge, they acted reasonably in not investigating.

¶ 50 Here, however, the Colosimos were aware of the abuse by Rapp and had either actual or constructive knowledge of the relationship between Rapp and the institutional defendants. These facts were sufficient to put them on inquiry notice of potential causes of action against the institutional defendants and to impose on them a duty to undertake reasonable inquiry as to the existence of their claims. Because the Colosimos concede they made no such inquiry, they can only speculate that any inquiry would have been futile or that the defendant entities would have affirmatively concealed any knowledge of the abuse or Rapp's pedophilic tendencies.

¶ 51 Mere speculation about the futility of a nonexistent inquiry is insufficient to toll the limitations period. Otherwise, any time a tortfeasor failed to affirmatively disclose potential wrongdoing, any plaintiff, even one who was on inquiry notice, could allege that any inquiry would have been futile, thereby tolling the limitations period.[89] Such a rule would eviscerate our statutes of limitation.

¶ 52 Moreover, under the Colosimos' theory, claims against direct tortfeasors such as Rapp would be barred by applicable statutes of limitation, while claims against remote or vicariously liable tortfeasors would remain viable indefinitely until the plaintiffs stumbled upon evidence alerting them to their claims. This would effectively eliminate statutes of limitation as a defense for remote tortfeasors, while retaining them as a defense for those most culpable. We fail to see the logic in such a scheme. We therefore hold that the fraudulent concealment version of the discovery rule did not toll the limitations period on the Colosimos' claims.

## II. THE COLOSIMOS ARE NOT ENTITLED TO DISCOVERY

■ ¶ 53 The Colosimos alternatively argue that they should be permitted to conduct discovery. They contend that they need discovery on the issue of whether any inquiries into the culpability of the institutional defendants would have been futile. Having determined that a plaintiff with knowledge of his abuse and the relationship between the abuser and the individual defendants is under a duty to investigate, the Colosimos, who undertook no investigation, would not be able to discover any set of facts that would justify tolling the limitations period. We therefore affirm the court of appeals' holding that the Colosimos are not entitled to conduct discovery.[90]

## CONCLUSION

¶ 54 Although we recognize the troubling nature of child sexual abuse, prior precedent and policy considerations counsel against tolling the statute of limitations in cases where a plaintiff is aware that he has been sexually abused but fails to make the causal connection between the abuse and his injuries. The limitations period similarly cannot be tolled under a fraudulent concealment or fraud theory in cases where a plaintiff with knowledge of his abuse and the relationship of the abuser to third-party defendants fails to investigate potential claims arising from the abuse. Here, the Colosimos were aware they had been abused by Rapp and were also aware of

---

88. *Carson*, 2005 UT 14, ¶¶ 10–11, 108 P.3d 741.

89. *See Mark K.*, 79 Cal.Rptr.2d at 79 (refusing to accept a rule that would allow a defendant's silence to toll a statute of limitations because this would result in a rule where "any time a tortfeasor failed to disclose evidence that would demonstrate its liability in tort, the statute of limitations would be tolled under the doctrine of concealment").

90. *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2004 UT App 436, ¶ 35, 104 P.3d 646.

Rapp's relationship with the institutional defendants. Because they failed to investigate their claims during the limitations period, we affirm the court of appeals' decision that their claims are barred by applicable statutes of limitation.

¶ 55 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.